[Dkt. No. 37]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| THOMAS E. ROWLEY,<br><br>                    Plaintiff,<br><br>     v.<br><br>TROOPER BRENNAN SULLIVAN, and<br>SERGEANT ANTHONY CASCIANO,<br><br>                    Defendants. | Civil No. 18-5241 (RMB/AMD)<br><br>OPINION |

**APPEARANCES:**

LAW OFFICES OF MALLON & TRANGER
By: Thomas J. Mallon, Esq.
86 Court Street
Freehold, New Jersey 07728
    Attorneys for Plaintiff Thomas E. Rowley

STATE OF NEW JERSEY, OFFICE OF THE ATTORNEY GENERAL
By: Marvin L. Freeman, Deputy Attorney General;
    Daveon M. Gilchrist, Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
    Attorneys for Defendants New Jersey State Police Trooper
    Brennan Sullivan and New Jersey State Police Sergeant
    Anthony Casciano

**RENÉE MARIE BUMB**, United States District Judge:

Plaintiff Thomas E. Rowley ("Plaintiff") brings this civil rights action under 42 U.S.C. § 1983, alleging violations of his federal and state constitutional rights in relation to his arrest and detention on June 19, 2016. In an Amended Complaint

[Dkt. No. 19], filed October 3, 2018, Plaintiff asserted claims for false arrest/ false imprisonment (Count I), malicious prosecution (Count II), excessive force (Count III), fabrication of evidence (Count IV), unlawful seizure (Count V), and violations of the New Jersey State Constitution and/or the New Jersey Civil Rights Act (Count VI). Now, this matter comes before the Court upon a Motion for Summary Judgment ("MSJ")[Dkt. No. 37], filed by Defendants, New Jersey State Police Trooper Brennan Sullivan and New Jersey State Police Sergeant Anthony Casciano ("Defendants") on October 16, 2019, seeking dismissal of Plaintiff's Amended Complaint in its entirety.  For the reasons set forth herein, Defendants' Motion for Summary Judgment will be **GRANTED** and Plaintiff's Amended Complaint will be **DISMISSED**.

I.     FACTUAL & PROCEDURAL BACKGROUND

In the early evening of June 19, 2016, Plaintiff was playing basketball with his sons in the driveway of his home on Hedding Road in Bordentown, New Jersey.  Around 5:00 pm, Trooper Sullivan made a right turn onto Hedding Road from Dunns Mill Road while responding to a call in his police vehicle.  Shortly after turning onto Hedding Road, Trooper Sullivan observed Plaintiff standing at the edge of his driveway and noticed a ball rolling into the street.  After hearing a pop, from running

2

over the basketball, Trooper Sullivan brought his vehicle to a stop in the road, exited his vehicle, and began walking across the street towards Plaintiff who was standing at the end of his driveway, visibly and audibly annoyed with Trooper Sullivan.

Although the parties dispute the exact statements made during the ensuing interaction, it is undisputed that Plaintiff and Trooper Sullivan became embroiled in a heated exchange. Plaintiff, who was admittedly "annoyed" and "frustrated," asked Trooper Sullivan whether he "was on a call," to which Trooper Sullivan responded in the affirmative. Plaintiff claims that Trooper Sullivan used profanity and warned Plaintiff, "don't make me embarrass you in front of your kids." Trooper Sullivan claims that Plaintiff, who was "exhibiting visual signs of intoxication," went on an aggressive profanity-laced tirade directed at Trooper Sullivan, in which Plaintiff complained that he was tired of troopers repeatedly speeding down Hedding Road. Plaintiff admits to voicing these frustrations and concerns, but denies that he was intoxicated or used profanity.

After expressing his complaints about troopers speeding down Hedding Road, Plaintiff attempted to walk around Trooper Sullivan and enter the roadway to retrieve the basketball that had become lodged under Trooper Sullivan's police vehicle. During the exchange between the parties, traffic had built up on Hedding Road from both directions, including at least three cars

3

stuck behind Trooper Sullivan's stopped vehicle. Given the traffic situation, Trooper Sullivan warned Plaintiff not to enter the roadway. Despite Trooper Sullivan's repeated warnings, Plaintiff persisted. After Plaintiff disregarded Trooper Sullivan's third instruction not to enter the roadway, Trooper Sullivan placed Plaintiff under arrest. When carrying out the arrest, Trooper Sullivan placed Plaintiff's hands behind his back and handcuffed him. Plaintiff testified that he complained that the handcuffs were too tight and were hurting him, but that Trooper Sullivan did not loosen them.

According to police records, Plaintiff was arrested at 5:22 pm and arrived at Bordentown Barracks, which is a quarter mile from Plaintiff's house, at 5:23 pm. After arriving at Bordentown Barracks, Plaintiff was placed in a holding cell and his handcuffs were removed. Plaintiff claims that approximately twenty minutes after arriving at the station, he was handed a complaint-summons for disorderly conduct and was about to be released until he told Sergeant Casciano that he wanted to file an internal affairs complaint against Trooper Sullivan. Plaintiff contends that Sergeant Casciano attempted to dissuade Plaintiff from filing a complaint against Trooper Sullivan and then made Plaintiff return to the holding cell while awaiting the complaint forms. About twenty minutes later, Sergeant Casciano brought him the forms to initiate a complaint against

4

Trooper Sullivan and released Plaintiff.  Police records indicate that Plaintiff was processed and released from the station at 6:11 pm.

Following his release from police custody, Plaintiff made stops at both the Bordentown Police Station and a Patient First medical facility, where he requested tests to measure his blood alcohol content in an attempt to prove that he had not consumed any alcohol.  Plaintiff's requests was denied at the Bordentown Police Station and Plaintiff declined to be tested at Patient First after he was informed that he would need to pay out-of-pocket for a test.  Although Plaintiff took some pictures of his wrists indicating redness from his handcuffs on the night of the incident, he never sought medical treatment for injuries related to the handcuffs.

On August 23, 2017, Bordentown Municipal Court Judge Joseph P. Montalto found Plaintiff guilty on the charge of disorderly conduct in violation of N.J.S.A. § 2C:33-2.  At trial, Judge Montalto found that even if Plaintiff was not intoxicated, the facts still supported a finding that Plaintiff was guilty of disorderly conduct.  In issuing his decision, Judge Montalto opined:

> "[I]f the defendant was in fact in the roadway on the date the trooper asked him three times to get out of the roadway, traffic was in fact stopped, and he did not comply with the trooper's orders... he created a risk to the public by his failure to get off the street.  And in

5

> that regards I feel that served no legitimate purpose...
> I am satisfied with that there was a physically hazardous
> condition created, and it served no legitimate purpose.
> A ball was struck, the car had stopped and the resident
> was irate and his conduct reflected that. Accordingly,
> there's a finding of guilty."

Municipal Trial Tr. [Dkt. No. 37-9], at 108:19-109:12.

Plaintiff appealed the Municipal Court decision to the Superior Court of New Jersey, Burlington County. On March 27, 2018, Superior Court Judge Thomas P. Kelly reversed the Municipal Court, finding Rowley not guilty because the State had failed to prove, beyond a reasonable doubt, that Rowley had the "purpose" to cause public inconvenience, annoyance or alarm. See Superior Ct. Tr. [Dkt. No. 42-3], at 18:13-16. Following his successful appeal of the Municipal Court decision, Plaintiff commenced this civil rights action in the United States District Court for the District of New Jersey on April 3, 2018.

## II. STANDARD OF REVIEW

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." Gonzalez v. Sec'y of Dept of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. Id.

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id.

In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)("speculation and conjecture may not defeat summary judgment").

## III. DISCUSSION

Defendants argue that summary judgment is warranted because the undisputed evidence in the record establishes that Trooper

7

Sullivan had probable cause and used only reasonable force in arresting Plaintiff.[1]  The Court agrees with Defendants.

### A.   *Count I: False Arrest/ False Imprisonment*

Plaintiff's first cause of action alleges that "Trooper Sullivan's actions resulted in Plaintiff being unlawfully detained, falsely arrested and falsely imprisoned." Am. Compl., at ¶ 36.  A plaintiff alleging Fourth Amendment claims for false arrest and false imprisonment is required to establish that the arrest was made without probable cause. See Berry v. Kabacinski, 704 Fed.Appx. 71, 73 (3d Cir. 2017)(citing Groman v. Twp. of Manalapan, 47 F.3d 628, 634, 636 (3d Cir. 1995)).

Based on the undisputed facts, this Court concludes that probable cause existed for Plaintiff's arrest.  The Third Circuit has recognized that "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Holmes v. McGuigan, 184 F. App'x 149, 150 (3d Cir. 2006))(quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)).  Although the question

---

[1] Defendants also argue that Plaintiff's claims are barred under the doctrine of qualified immunity.  Because this Court finds that summary judgment is warranted on the merits, the Court need not reach the issue of qualified immunity.

8

of probable cause is generally a question for the jury, a district court may conclude on summary judgment "that probable cause exists as a matter of law if the evidence, when viewed in the light most favorable to the plaintiff, reasonably would not support a contrary factual finding." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788-789 (3d Cir. 2000)(internal quotation marks and citation omitted).

In this case, Plaintiff was arrested and charged with disorderly conduct in violation N.J.S.A. § 2C:33-2A(2). As defined by this statute, "[a] person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he... [c]reates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor."

In relation to this charge, Plaintiff admits that he was "annoyed" with Trooper Sullivan and purposefully disregarded at least three lawful commands from Trooper Sullivan to remain on his property and not enter the roadway, where traffic was building up.  Indeed, it was based on Plaintiff's repeated refusal to heed Trooper Sullivan's warnings to get out of the roadway that Judge Montalto found that "there was a physically hazardous condition created, and it served no legitimate purpose."  In finding Plaintiff guilty of disorderly conduct,

9

Judge Montalto necessarily found that Trooper Sullivan had probable cause for the initial arrest.

In overturning Judge Montalto's decision, Judge Kelly never disputed that Trooper Sullivan had probable cause to arrest Plaintiff. Rather, Judge Kelly disagreed that the State had met its burden of proof, of "beyond a reasonable doubt," to establish that Plaintiff had acted with "purpose" to cause public inconvenience, annoyance or alarm. This finding, however, does not suggest that Trooper Sullivan lacked probable cause for the initial arrest. To that end, the burden for establishing that an arresting officer reasonably believed that an offense was being committed at the time of the arrest is a significantly lower burden than proving guilt at trial. Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005).

Given Plaintiff's admission that he repeatedly refused to cooperate with Trooper Sullivan's warnings to stay out of the street while traffic built up on the road, no reasonable jury could conclude that Trooper Sullivan lacked a reasonable belief that the crime of disorderly conduct was being committed. The fact that the conviction was overturned on appeal, because the State could not prove the element of "purpose" beyond a reasonable doubt, does not override the facts that gave rise to probable cause for the arrest. Because the undisputed facts establish that Trooper Sullivan had probable cause, and a

10

reasonable basis, to arrest Plaintiff for disorderly conduct, summary judgment is warranted in favor of Trooper Sullivan on the claim of false arrest and false imprisonment.

**B.** *Count II: Malicious Prosecution*

Second, Plaintiff claims that Trooper Sullivan "lacked probable cause to initiate a criminal proceeding against Plaintiff." Am. Compl., at ¶ 40. To prevail on a claim for malicious prosecution brought under 42 U.S.C. § 1983, a plaintiff must satisfy each of the following five elements: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Minatee v. Philadelphia Police Dep't, 502 F. App'x 225, 227 (3d Cir. 2012)(quoting Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009)(en banc)). Furthermore, "the establishment of probable cause as to any one charge [of several charges] is sufficient to defeat ... Fourth Amendment claims," including claims for malicious prosecution. Startzell v. City of Phila., 533 F.3d 183, 204 n. 14. (3d Cir. 2008).

Although Plaintiff has established that the criminal proceeding brought against him was ultimately resolved in his favor on appeal, summary judgment is warranted because the undisputed facts establish that Trooper Sullivan had probable cause to arrest and charge Plaintiff with disorderly conduct. As discussed above, Plaintiff admits that he repeatedly refused to heed Trooper Sullivan's warnings to stay out of the crowded roadway. As such, no reasonable jury could conclude that Trooper Sullivan lacked probable cause to arrest and charge Plaintiff.

C. *Count III: Excessive Force*

Third, Plaintiff contends that Trooper Sullivan "engaged in the use of force that was excessive and objectively unreasonable under the circumstances." This Court finds that Plaintiff has not pointed to evidence in the record that would support a finding that the amount of force used in his arrest was anything but reasonable.

The Fourth Amendment prohibits the use of excessive force by a law enforcement officer in arresting or detaining a person. Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004)(citing Graham v. Connor, 490 U.S. 386, 395 (1989)). The test for reasonableness under the Fourth Amendment is whether under the totality of the circumstances, "the officers' actions

are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." See Wells v. Fuentes, 2014 WL 4053954, at *3 (D.N.J. Aug. 13, 2014)(quoting Graham, 490 U.S. at 397). "Objective reasonableness" under the circumstances is to be evaluated from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." See Carswell, 381 F.3d at 240.

The Third Circuit has held that a plaintiff who suffers serious injury as a result of "excessively tight" handcuffs when officers ignore complaints that the handcuffs are causing significant pain may establish that the officer's "use of force was excessive in violation of the Fourth Amendment." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004). In analyzing excessive force claims premised upon excessively tight handcuffs, courts in the District of New Jersey have considered "the intensity of the plaintiff's pain, the officer's awareness of the plaintiff's pain, whether the plaintiff asked to have the handcuffs removed and how long after those requests the handcuffs are removed, whether there were circumstances justifying a delay in removing the handcuffs, and the severity of the injury the plaintiff suffered." Wells, 2014 WL 4053954, at *4 (quoting Cincerella v. Egg Harbor Twp. Police Dep't, 2009 WL 792489, at *10 (D.N.J. Mar. 23, 2009)).

Based on the record, there is insufficient evidence for a reasonable jury to conclude that Trooper Sullivan's use of force in handcuffing Plaintiff was excessive. Although Plaintiff testified at his deposition that he told Trooper Sullivan that the handcuffs were too tight immediately after he was handcuffed, and that Trooper Sullivan disregarded that complaint, Plaintiff admits that the handcuffs were removed almost immediately after he arrived at the Bordentown Barracks. This means that Plaintiff was only wearing the handcuffs for approximately two minutes. Additionally, Plaintiff's assertions that his wrists hurt so badly that he needed to take off from work the next day and that his wrists were "bruised, swollen, and sore for approximately seven to ten days following his arrest" are unsupported by any evidence in the record. At no point after Plaintiff arrived at Bordentown Barracks did he complain about or seek treatment for pain in his wrists from the handcuffs. Plaintiff also did not seek treatment for injuries to his wrists at either the Bordentown Police Station or Patient First, or anywhere thereafter. Furthermore, even though Plaintiff contends that bruising and swelling persisted for seven to ten days, the only pictures in the record were taken on the evening of the incident and show only mild redness. Accordingly, given the facts in the record, the Court finds that

no reasonable jury could find that Trooper Sullivan used excessive force in handcuffing Plaintiff.

### D. *Count IV: Fabrication of Evidence*

In his fourth cause of action, Plaintiff contends that Trooper Sullivan fabricated evidence that Plaintiff was intoxicated and using profanity at the time of his arrest. Upon review of the record, the Court finds that Plaintiff's claim fails because Trooper Sullivan would have had probable cause to arrest Plaintiff even if the allegations of intoxication and profanity were accepted as false.

The Third Circuit has recognized that "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." Black v. Montgomery Cty., 835 F.3d 358, 371–72 (3d Cir. 2016), as amended (Sept. 16, 2016). However, on a claim for fabrication of evidence, there is a high bar for evidence to be considered "fabricated." Indeed, "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." Halsey v. Pfeiffer, 750 F.3d 273, 295 (3d Cir. 2014). Indeed, there must be "persuasive evidence supporting a

15

conclusion that the proponents of the evidence" are aware that evidence is incorrect or that the evidence is offered in bad faith. Id.

In this case, Plaintiff suggests that Officer Sullivan fabricated evidence by falsely claiming that Plaintiff was intoxicated and using profanity at the time of the altercation. To that end, in the New Jersey State Police Investigation Report, Officer Sullivan stated that upon encountering Plaintiff he "detected the odor of an alcoholic beverage emanating from his person and he was exhibiting visual signs of intoxication" and that Plaintiff directed obscenities towards Officer Sullivan. See New Jersey State Police Investigation Report [Dkt. No. 37-6], at 4. Plaintiff disputes these allegations, claiming that he did not drink any alcohol on the date in question and never used profanity during the incident. However, there is no undisputed evidence that Plaintiff never drank alcohol and did not use profanity. To the contrary, one witness gave a statement to Trooper Sullivan on the night of the incident indicating that "the adults were drinking" and that Plaintiff "got in the Trooper's face and started to curse at him, he was warned but didn't listen so he got arrested." Id.

Ultimately, the truth or falsity of the reports of intoxication and profanity are irrelevant in this case. The Court notes that Plaintiff was charged with disorderly conduct

16

for creating a hazardous condition by failing to heed Trooper Sullivan's repeated warnings not enter the roadway. Relevantly, Plaintiff's charged offense did not hinge on him being intoxicated and was not predicated on the subsection (b) of N.J.S.A. § 2C:33-2, which pertains to use of "offensive language." Therefore, the Plaintiff could have been charged with disorderly conduct even if he were not intoxicated and did not use any offensive language. As such, even when viewed in a light most favorable to Plaintiff, the claim for fabrication of evidence pertains to immaterial allegations and, thus, lacks any factual or legal support.

### E.  *Count V: Unlawful Seizure*

In addition to his claims for false arrest and false imprisonment against Trooper Sullivan, Plaintiff also asserts a Fourth Amendment claim for unlawful seizure against Sergeant Casciano for allegedly keeping Plaintiff in custody for an additional twenty minutes after Plaintiff asked to file an internal affairs complaint against Trooper Sullivan. Generally, a § 1983 claim for unlawful seizure is assessed under the same probable cause standard as false arrest and false imprisonment.

As previously noted, this Court found that Trooper Sullivan had probable cause to take Plaintiff into custody. Because probable cause existed, Sergeant Casciano was permitted to keep

17

Plaintiff in custody for a reasonable amount of time necessary for processing.  There is no evidence in the record that Plaintiff, who was in custody for a sum total of forty-nine minutes, was arrested a second time by Sergeant Casciano.  In fact, there is no evidence that Plaintiff was kept in custody any longer than necessary to process Plaintiff and provide him with the internal affairs paperwork that Plaintiff himself requested.  Therefore, Plaintiff's claim for unlawful seizure against Sergeant Casciano is unsupported by evidence in the record and must be dismissed.

### F. *Count VI: State Law Claims*

Finally, Plaintiff also asserts claims against Defendants for violations of the New Jersey State Constitution and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2.  The NJCRA was "modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution." See Trafton v. City of Woodbury, 799 F.Supp.2d 417, 443-44. (D.N.J. 2011); Castillo-Perez v. City of Elizabeth, 2014 WL 1614845, at *9 (D.N.J. Apr. 21, 2014).  Notably "[t]his District has uniformly interpreted the NJCRA in parallel with Section 1983 and read the two as coextensive." Sharif v. City of Hackensack, 2018 WL 5619721, at *7 (D.N.J. Oct. 29, 2018)(citing Estate of Lydia Joy Perry ex rel Kale v.

18

Sloan, 2011 WL 2148813, at *2 (D.N.J. May 31, 2011)(collecting cases)). Accordingly, because Plaintiff has not suggested any distinction between his claims under the NJCRA and the parallel provisions of 42 U.S.C. § 1983, Plaintiff's NJCRA claim will be dismissed for the same reasons as his § 1983 claims.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be **GRANTED**. Plaintiff's Amended Complaint will be **DISMISSED** with prejudice. An appropriate Order shall issue on this date.

DATED: June 30, 2020

                                         s/Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         UNITED STATES DISTRICT JUDGE